ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Sep-15 15:11:57
60CV-21-5763
C06D16 : 13 Pages

Circuit Court of Pulaski County, Arkansas

**RICHARD HARPER**                                                    **PLAINTIFF**

v.                                Case No. _____

**SOUTHEAST ARKANSAS EDUCATION**                     **DEFENDANTS**
**SERVICE COOPERATIVE and**
**JERRI CLARK**

## COMPLAINT

Comes now Plaintiff Richard Harper, and states:

### PARTIES, JURISDICTION, AND VENUE

1. Mr. Richard Harper is an African-American male residing in Little Rock, Arkansas.

2. Southeast Arkansas Education Service Cooperative (SEARK) is an entity providing educational services in the state of Arkansas and is based in Monticello, Arkansas.

3. During his work for SEARK, Mr. Harper was housed within the Arkansas Department of Education, which is based in Little Rock, Arkansas.

4. Jerri Clark, at all times relevant to this case, served as Mr. Harper's supervisor at the Department of Education.

5. This Court has jurisdiction over the parties and subject matter in this case, and venue is proper in this Court.

### FACTS

6. Mr. Harper was hired by SEARK as an ARMAC Specialist in January 2018.

7. In that role, he was to assist in the processing of Medicaid claims for Arkansas schools.

8. He performed this job satisfactorily, and received evaluations rating him as above average in 2018 and 2019.

9. One of his accomplishments was growing his program by over 100% in approximately two years.

1



10. Nonetheless, throughout his tenure, Defendant Clark subjected him to frequent harassment and discrimination, such as:

   a. Mr. Harper, one of the office's few non-white employees, was singled out as the only person not allowed to speak during Zoom calls;

   b. Mr. Harper was targeted as the only employee with whom other employees could not collaborate to accomplish tasks.

   c. Being given greater responsibilities with no increase in pay while. Meanwhile, a white individual was brought in to take on the title of the job he was doing while the responsibilities remained with Mr. Harper.

   d. More generally, he was paid less than numerous white employees with fewer, less crucial duties than he did.

   e. He was denied the opportunity to make presentations and instead had to see his white colleagues allowed to present to groups using his work product;

   f. Being placed on a Professional Improvement Plan despite having increased the income and efficiency of the office and found a grave error of Defendant Clark's. She even blamed *him* for her mistake.

   g. Having frequent comments criticizing his work performance, questioning his competence, and belittling him loudly directed at him in the presence of his colleagues. This abuse was so frequent and public that several employees approached both Mr. Harper *and* Ms. Clark about how out of hand it had gotten.

11. He reported these issues to superiors both inside the Department of Education and at SEARK to no avail.

12. The defendants created intolerable working conditions with the intention of forcing him to quit. In October 2020, he did so.

13. He filed a timely EEOC charge and received a Right to Sue Letter dated April 7, 2021; pursuant to a tolling agreement, the deadline to file his Title VII claim is September 15, 2021. *See attached* Exhibits.

## CAUSES OF ACTION

Count One – Discrimination
Pursuant to Title VII, 42 U.S.C. § 1981 through § 1983, and the Arkansas Civil Rights Act

14. Mr. Harper hereby incorporates the previous allegations of fact made herein.

15. He, as an African-American male, is a member of a protected class.

16. He was meeting his employer's legitimate job expectations.

17. He suffered an adverse employment action, including severe mistreatment, lack of opportunity, alienation, pay discrepancies, and constructive termination.

18. Similarly situated white employees were treated more favorably.

### Count Two – Hostile Work Environment
Pursuant to Title VII, 42 U.S.C. § 1981 through § 1983, and the Arkansas Civil Rights Act

19. Mr. Harper hereby incorporates the previous allegations of fact made herein.

20. He, as an African-American male, is a member of a protected class.

21. He was subject to unwelcome harassment as a result of his race.

22. The harassment was severe enough to affect the terms, conditions, or privileges of his employment.

### Count Three – Retaliation
Pursuant to Title VII, 42 U.S.C. § 1981 through § 1983, and the Arkansas Civil Rights Act

23. Mr. Harper hereby incorporates the previous allegations of fact made herein.

24. He, as an African-American male, is a member of a protected class.

25. He engaged in protected activity.

26. He suffered adverse employment action as a result.

### Count Four – Wrongful Termination

27. Mr. Harper hereby incorporates the previous allegations of fact made herein.

28. He exposed activity that was illegal and contrary to relevant rules and regulations.

29. He was unfairly disciplined, scrutinized, harassed, and constructively terminated for this activity.

### DAMAGES & CONCLUSION

30. Mr. Harper suffered, without limitation, negative effects to his mental and physical health, loss of income, loss of reputations, stress, emotional anguish, and other harms.

31. Plaintiff Harper is entitled to the following as relief:

    a. Injunctive relief;
    b. Back pay and front pay;
    c. Compensatory damages;
    d. Punitive damages;
    e. Fees and costs; and
    f. All other legal and equitable relief to which the Court deems him entitled.

32. He requests a trial by jury.

*[signature]*
Plaintiff Richard Harper

501-541-0042
6808 Ridgemist LN
NLR, AR 72117

| EEOC Form 161 (11/2020) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Richard L. Harper, Jr.<br>6808 Ridgemist Lane<br>North Little Rock, AR 72117 | From: | Little Rock Area Office<br>820 Louisiana<br>Suite 200<br>Little Rock, AR 72201 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 493-2021-00062 | Matilda S. Louvring,<br>Investigator | | (501) 324-5535 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

April 7, 2021

Enclosures(s)

**William A. Cash, Jr.,**
**Area Office Director**

*(Date Issued)*

cc:   **Jay Bequette**
**Bequette Billingsley & Kees P.A.**
**425 W CAPITOL AVE**
**STE 3200**
**Little Rock, AR 72201**

## TOLLING AGREEMENT

This Tolling Agreement (the "Agreement") is made as of this 6th day of July, 2021 (the "Effective Date") by and between Mr. Richard Harper ("Claimant") and Southeast Arkansas Education Service Cooperative ("SEAESC"). The parties agree that this Agreement will also apply to any party affiliated with or controlled by Respondent that can or should be a defendant in any suit filed in this matter. Claimant is represented by Attorney Geoffrey D. Kearney, P.O. Box 8276, Pine Bluff, Arkansas 71611. Respondent is represented by Attorney Jay Bequette, 425 W Capitol Ave. # 3200, Little Rock, AR 72201.

NOW THEREFORE, the parties agree and covenant to be bound by the terms set forth in this Agreement as follows:

**1. Tolling Period.** Any statutes of limitation, statutes of dispose, or other defenses Respondent may have with respect to any claim by the Claimant shall be tolled until September 7, 2021 (the "Tolling Date").

**2. No Litigation.** Between the Effective Date and the Tolling Date, the parties agree not to initiate any litigation or other legal proceeding against the other party with regards to the claim described above.

**3. No Admission of Liability.** Nothing in this Agreement shall constitute admission by either party of any claim or cause of action, any fact, conclusion or liability, or the applicability or running of any statute of limitation, statute of repose, or any other time-based defense.

**4. Preservation of Rights.** Except as otherwise expressly provided herein, each party reserves all rights, defenses, and claims it may have against the other party.

**5. Termination.** This Agreement will terminate on the Tolling Date. Either party may terminate this Agreement at an earlier date by delivering ten (10) days' written notice to the other party.

**6. Governing Law.** The terms of this Agreement shall be governed exclusively by the laws of the State of Arkansas, without regard to its conflicts of law provisions.

**7. Entire Agreement.** This Agreement constitutes the entire agreement between the parties and supersedes all prior understandings of the parties.

**8. Amendments.** This Agreement may not be modified or amended except by a written agreement signed by all of the parties.

**9. Notices.** Any notice or other communication given or made to either party under this Agreement shall be in writing and delivered by email, by hand, sent by overnight courier service or sent by certified or registered mail, return receipt requested, to counsel's address stated above or to another address as that party may subsequently designate by notice and shall be deemed given on the date of delivery.

**10. Waiver.** Neither party shall be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing. Waiver by either party of a breach or violation of any provision of this Agreement shall not constitute a waiver of any subsequent or other breach or violation.

**11. Disputes.** Any dispute arising from this Agreement shall be resolved in the courts of the State of Arkansas.

**12. Attorneys' Fees** . If either party brings legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover from the other party its expenses (including reasonable attorneys' fees and costs) incurred in connection with the action and any appeal.

**13. Severability.** If any provision of this Agreement is held to be invalid, illegal, or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid, legal, and enforceable as though the invalid, illegal or unenforceable parts had not been included in this Agreement.

**14. Successors and Assigns.** This Agreement shall be binding and inure to the benefit of the parties and their respective legal representatives, heirs, administrators, executors, successors and permitted assigns.

**15. Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together, shall constitute one and the same document.

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the date first written above.

_____    _____
**Attorney Geoffrey D. Kearney**              **Attorney Jay Bequette**
**On Behalf of Claimant**                          **On Behalf of Respondent**

## TOLLING AGREEMENT ADDENDUM

This Tolling Agreement Addendum (the "Addendum") is made as of this 3rd day of September, 2021 (the "Effective Date") by and between Mr. Richard Harper ("Claimant") and Southeast Arkansas Education Service Cooperative ("SEAESC"). The parties agree that this Agreement will also apply to any party affiliated with or controlled by Respondent that can or should be a defendant in any suit filed in this matter. Claimant is represented by Attorney Geoffrey D. Kearney, P.O. Box 8276, Pine Bluff, Arkansas 71611. Respondent is represented by Attorney Jay Bequette, 425 W Capitol Ave. # 3200, Little Rock, AR 72201.

NOW THEREFORE, the parties agree and covenant to be bound by the terms set forth in this Addendum as follows:

1. This Addendum is to the Tolling Agreement entered into on or about July 6th, 2021.

2. The parties agree to extend the Tolling Agreement, and that any lawsuit filed by Mr. Harper that stems from or is related to his employment with Respondent shall be deemed timely if filed on or before September 15, 2021. If suit is filed by that date, any statutes of limitation or repose, laches, or other similar defenses Respondent may have shall not be raised, alleged, asserted, relied upon, or otherwise attempted or benefited from.

3. This Addendum is otherwise governed by the terms of the Tolling Agreement.

IN WITNESS WHEREOF, this Addendum has been executed and delivered as of the date first written above.

_____
Attorney Geoffrey D. Kearney
On Behalf of Claimant

_____
Attorney Jay Bequette
On Behalf of Respondent

1

Richard Harper
6808 Ridgemsit LN
NLR, AR 72117

May __28_. 2021

Southeast Arkansas Education Service Cooperative

c/o Jay Bequette

Via Email

RE: Richard Harper v. SEARK

Dear Mr. Bequtte:

As I previously informed you, I represent Mr. Richard Harper concerning the above-referenced matter. I provide this correspondence to open a dialogue about his claim. It is, of course, provided only for purposes of discussing settlement. No statement herein is intended as an admission of liability, nor any facts, by my client. It is transmitted privately and confidentially, is not a statement of fact by my client or any other individual, and is not admissible or usable against his interest in any way.

FACTS

Mr. Harper was hired by SEARK as an ARMAC Specialist in January 2018. In that role, he was to assist in the processing of Medicaid claims for Arkansas schools. He performed this job satisfactorily and received evaluations rating him as above average in 2018 and 2019. He was housed in the Arkansas Department of Education and supervised by Ms. Jerri Clark.

In April 2020, problems regarding the disbursement of federal funds were discovered. This problem was caused by an error of Ms. Clark. However, instead of accepting responsibility for her mistake, she attempted to place the blame on Mr. Harper. For instance, she referenced this incident as a failing of his during his evaluation and placed him on a Professional Improvement Plan. Additionally, she began making frequent comments in front of their colleagues criticizing his work performance, questioning his competence, and belittling him. This abuse, which was so frequent and public that several employees approached both Mr. Harper and Ms. Clark about how out of hand it had gotten. Nonetheless, it

continued through October 2020 when, unable to take any more of it, Mr. Harper left SEARK. Though this treatment was not new, per se, it was an escalation of the hostility and discrimination that had previously been inflicted upon Mr. Harper throughout his tenure with SEARK. Moreover, we have evidence, including a witness statement, suggesting that Ms. Clark's hostility toward Mr. Harper worsened as a result of his complaining about how she treated him.

A non-exhaustive list of the issues he faced includes:

Mr. Harper, one of the few non-white employees, was singled out as the only person not allowed to speak during Zoom Presentations.

Mr. Harper, who grew his program by over 100% in approximately two years, was subjected to remarks regarding whether he could be "trust[ed]" to continue shepherding his program.

Mr. Harper was targeted as the only employee with whom other employees could not collaborate to accomplish tasks.

Mr. Harper was falsely told that there was insufficient money to give him a raise only to discover that his successor, a less experienced white person, was hired at a higher salary than he was ever paid during his tenure.

Mr. Harper was denied the opportunity to work from a different building or move to a different department away from Ms. Clark due to the alleged requirement that he must work out of the Little Rock office. He subsequently discovered that his successor, a less experienced white person, would be allowed to work from Monticello.

Mr. Harper complained about a superior and was told that his best course of action would be to simply find a new job.

Ms. Clark delegated the responsibilities of ARMAC Training Specialist without a pay increase, brought in someone else (a white individual) to assume that title, yet still required Mr. Harper to continue undertaking those duties with no increase in pay.

Ms. Clark assigned Mr. Harper several duties of a Program Director (primarily completing and filing Medicaid claims) without additional pay.

During the program redesign with SRI, Mr. Harper was made the sole point person—again, without additional pay.

The mistreatment Mr. Harper received worsened in April 2020, when it was discovered that, despite his having done his job and flagged the issue for Ms. Clark, an oversight by her resulted in federal funds not being disbursed timely. After he refused to accept the blame that Ms. Clark attempted to foist onto him, she became more dismissive, abusive, and overbearing. This event also precipitated his first and only non-positive evaluation during his tenure with SEARK. This evaluation also resulted in Mr. Harper being placed on probation.

He was required to provide a daily accounting of all his tasks.

Mr. Harper was paid less than several employees with less expansive duties.

He was denied the opportunity to make presentations and instead had to see his white colleagues allowed to present to groups using his work product.

Notably, there exists evidence suggesting that

Mr. Harper filed an EEOC charge based on these issues. His Right to Sue letter is dated April 7, 2021.

CAUSES OF ACTION

Mr. Harper was one of the very few non-white employees in his program and was treated worse than essentially everyone in the office, to an extent that it was troubling to some colleagues. Moreover, a factor contributing to his mistreatment was his refusal to take the blame for his boss and his decision to report the abuse. The bad actor, Jerri Clark, has at least one other documented incident of having targeted a black employee under her supervision.

Under these circumstances, it is clear that SEARK's policies on discrimination, harassment, and retaliation, both regarding the obligation to take seriously and investigate such issues and deal with them substantively, were disregarded. More to the point, these facts support plausible claims for racial discrimination, hostile work environment, and retaliation. Moreover, a standard wrongful termination and/or breach of contract cause of action may be in order.

## DAMAGES & DEMAND

Mr. Harper's salary when he resigned was $$42,869.59. His 2019 salary was $41,884. He had nine months remaining on his contract. Additionally, the sadness and stress caused by his persistent mistreatment affected his health, both mental and physical. He also provided much more work than he was compensated for, and had a portfolio that approximated that of someone making in the $70,000 range.

In the interest of compromise, let us assume that a fair ballpark estimate of the value Mr. Harper gave SEARK yet was denied in part due to the discrimination he faced was over the final two years of his tenure was $70,000 per year. Therefore, we posit that he was underpaid by approximately $55,000 over two years. Moreover, he was denied $30,000 in SEARK salary due to his constructive discharge. However, he did find a comparable job shortly after his departure. Still, given his experience, education, and skills, he surely would have been able to find a better job if he had not been forced out and placed in a situation in which he needed to quickly find new employment.

The profound stress and physical pain Mr. Harper, a rather young man, experienced are also compensable. Though these things are not easily amenable to the fixing of a dollar figure, $25,000 for pain and suffering is a reasonable estimate of my client's damages.

In sum, we believe that damages in the range of $80,000 to $90,000 are a reasonable range for what he might be able to obtain from a jury.

That said, we understand that getting to that point would require a good deal of time, discovery, motion practice, and likely employment of expert witnesses. Therefore, in the interest of allowing both sides to move forward, Mr. Harper has authorized me to make a settlement offer of $60,000 and an amendment to his personnel file to remove those deficiencies identified by Ms. Clark.

## CONCLUSION

As you are aware, my client is subject to a limitations period for his Title VII claims. Therefore, I request that you provide a timely response. If we do not hear back by June 4, I will assume you have no interest in discussing settlement and will prepare to file suit.

Tolling Agreement enter into July 6, 2021- September 7, 2021

I appreciate your consideration in this matter.

Yours,

Richard Harper